NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1419
_____

JOE PASZKOWSKI,
                    Appellant
v.

ROXBURY TOWNSHIP POLICE DEPARTMENT;
OFF. JOHN SYLVESTER; LT. TIMOTHY DRISCOLL;
JOHN DOE, Fictitious Name
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-13-cv-07088)
District Judge:  Hon. Faith S. Hochberg
_____

Submitted Under Third Circuit LAR 34.1(a)
September 9, 2014

Before:  FISHER, JORDAN, and HARDIMAN *Circuit Judges*.

(Filed: September 16, 2014)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

    Joe Paszkowski appeals the dismissal of his complaint by the United States

District Court for the District of New Jersey.  We will affirm.

## I.    Background[1]

On April 16, 2013, Paszkowski called his estranged daughter, Jody Stamatos, and left the following voicemail in response to the death of her husband, to whom he was very close:

> I heard Nick is dead, that he committed suicide.  I'm going to hang both of you … so bad.  I'm coming up to New Jersey.  I'm leaving tomorrow morning and I'm going to … have a prosecutor look into the case for what you did to … Nick.  You two … are going to be both in jail.[2]

(App. at A21 (omissions in original).)  Two weeks later, Stamatos played that voicemail for Officer John Sylvester at the Roxbury Township Police Department.  She told him that she had received two other threatening voicemails from Paszkowski, who had also called two other family members to tell them he was going to kill her.  She explained that her cousin forwarded her one of those messages, in which Paszkowski stated, "'If she (meaning Stamatos) does not unblock my number … I am coming to town to kill her.  I don't care about going to jail.'"  (App. at A18 (alteration and omission in original).)  Stamatos told Sylvester that, based on those messages, she was "in fear for her life."  (App. at A17).  Sylvester contacted two assistant prosecutors, but when Stamatos learned that Paszkowski would be arrested, she decided that she did not want to press criminal charges.

---

[1] Because we review the grant of a motion to dismiss, we recount the facts as alleged by the non-movant, Paszkowski, accepting them as true.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[2] It is unclear to whom else Paszkowski was referring in that voicemail.

2

Despite Stamatos's refusal to press charges, Sylvester executed a Complaint-Warrant alleging that Paszkowski did "'knowingly and purposely threaten to kill another, specifically by hanging them in violation of" New Jersey's terroristic-threats statute, N.J. Stat. Ann. § 2C:12-3b.  (App. at A16 (original in all capital letters).)  The Complaint-Warrant, however, excluded reference to the portion of the first voicemail mentioning that Paszkowski intended to call a prosecutor.  A Municipal Court judge reviewed the Complaint-Warrant, spoke with Stamatos and Sylvester, and then signed the warrant. Paszkowski was arrested on May 8, 2013, but on August 2, 2013, a Morris County Grand Jury determined not to indict him.

Paszkowski subsequently filed suit in the District Court against Sylvester and Lt. Timothy Driscoll, who had initially approved the Complaint-Warrant, as well as an unknown John Doe and the Roxbury Township Police Department (collectively, "Appellees").  His Amended Complaint included federal claims based on 42 U.S.C. § 1983 and state-law claims under Article I, paragraph 7 of the New Jersey Constitution, and sections 10:6-1 and 10:6-2 of the New Jersey Civil Rights Act.  He grouped his claims into two counts, the first focusing on the individual defendants and alleging violations of his right to be free from unlawful seizure, and the second against the police department for failure to properly screen, train, and supervise the individuals and provide appropriate safeguards to prevent those violations.  Appellees filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, a motion for summary judgment on the basis that they were entitled to qualified immunity.  The District Court held that the Amended Complaint failed to plead facts establishing a

constitutional violation and that, additionally, the count against the police department did not meet the pleading standard of Rule 8 of the Federal Rules of Civil Procedure, as Paszkowski himself effectively conceded. The Court declined to exercise supplemental jurisdiction over Paszkowski's state-law claims. Paszkowski subsequently brought his state-law claims in state court and timely appealed only the dismissal of his § 1983 claims against the individual defendants.

## II.    Discussion[3]

Paszkowski argues that no reasonable officer would have perceived probable cause to charge him with terroristic threats because the threat he made was not imminent and was not made under circumstances that would cause a person to believe that it was likely to be carried out.[4] Specifically, he argues that the two weeks that elapsed between

---

[3] The District Court had jurisdiction over Paszkowski's § 1983 claims under 28 U.S.C. §§ 1331 and 1343(a). We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a district court's grant of a motion to dismiss under Rule 12(b)(6). *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 273 (3d Cir. 2004). We first accept all well-pleaded factual allegations as true and disregard the plaintiff's legal conclusions. *Fowler*, 578 F.3d at 210-11. We "then determine whether the facts alleged ... are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* at 211 (internal quotation marks omitted). To be "plausible," the complaint must, through its factual allegations, "permit the court to infer more than the mere possibility of misconduct." *Id.* (internal quotation marks omitted). Further, we may rely on "document[s] integral to or explicitly relied upon in the complaint" for our review "without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (second alteration in original) (emphasis omitted) (internal quotation marks omitted).

[4] New Jersey's terroristic-threats statute provides:

A person is guilty of a crime of the third degree if he threatens to kill another with the purpose to put him in imminent fear of death under

4

his call to Stamatos and her conversation with Sylvester, along with the fact that he made the call from out of state and said he would call a prosecutor, showed there was no real threat to her. Additionally, he contends that Sylvester "act[ed] in reckless disregard for the truth" by leaving out the second half of his message to Stamatos – the statement of his intent to call a prosecutor – when Sylvester presented the Complaint-Warrant to the magistrate.[5] (Appellant's Br. at 14.) Those arguments fail.

A § 1983 claim based on false arrest made pursuant to a warrant may survive a motion to dismiss if the plaintiff adequately pleads "(1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (internal quotation marks omitted). To find reckless disregard for the truth based on an omission, the court must determine if the officer omitted facts that a reasonable officer would conclude a judge would want to know. *Id.* at 788. To determine the materiality of an alleged omission, we insert the

---

circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out.

N.J. Stat. Ann. § 2C:12-3b.

[5] Paszkowski makes the additional argument that his constitutional rights were violated because an arrest warrant was issued instead of a Summons, which was in violation of Rule 3:3-1(c) of the Rules Governing the Courts of the State of New Jersey. This argument fails, as the state rule he points to allows for a warrant if "there is reason to believe that the defendant is dangerous to self, other persons, or property." N.J. Ct. R. 3:3-1(c)(3).

omitted facts "and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Id.* at 789.

"The proper inquiry in a section 1983 claim based on false arrest … is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). "A police officer may be liable … for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." *Wilson*, 212 F.3d at 789-90.

Here, assuming for the sake of argument that the omission of Paszkowski's comment regarding a prosecutor was reckless, the inclusion of the text of the full voicemail would not have made a material difference as to the probable-cause determination. The District Court correctly decided that, first, "no reasonable person could conclude that a judge would want to know that … [Paszkowski] threatened to go to the prosecutor and send the victims to jail" after already making an explicit death threat, and, second, even if that were not the case, a "corrected" warrant affidavit would still establish probable cause. (App. at 8.) Sylvester had no reason to disregard the alarming information presented to him, namely Paszkowski's blatant threat against the life of Stamatos, captured in a recording and corroborated by both her own statement that she

feared for her life and the reiteration of that threat to other family members. In light of that evidence, we cannot say that no reasonable, competent officer would conclude there was probable cause that Paszkowski violated the terroristic-threats statute. And because the claim against Driscoll is wholly derivative of the claim against Sylvester, that too must fail.[6]

## III. Conclusion

We will accordingly affirm the District Court's dismissal of Paszkowski's complaint.

---

[6] The District Court did not address the § 1983 claim against the Doe defendant; it was nonetheless permitted to dismiss the case outright because "an action cannot be maintained solely against Doe defendants." *Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998).